**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **SARA MIRANDA, individually,** | |
| Plaintiff, | |
| v. | Case No. 26-9683 |
| **DANA L. ROBY, individually, ADAM J. STONE, individually and GETMYBOAT, INC. d/b/a GETMYBOAT, a Delaware corporation,** | |
| Defendants. | |

**COMPLAINT FOR DAMAGES UNDER THE GENERAL MARITIME LAW**
**FED. R. CIV. P. 9(h) ADMIRALTY CLAIM**

Plaintiff SARA MIRANDA ("Plaintiff' or "Miranda"), individually, brings this Complaint against Defendants DANA L. ROBY ("Roby"), ADAM J. STONE ("Stone"), and GETMYBOAT, INC. d/b/a GETMYBOAT ("GetMyBoat") (collectively, "Defendants"), and states as follows:

**PARTIES**

1.      Plaintiff SARA MIRANDA is a natural person and resident of Chicago, Illinois, Cook County, Illinois.

2.      Defendant DANA L. ROBY is a natural person and resident of Chicago, Illinois, Cook County, Illinois.

3.      At all times relevant to this Complaint, ROBY owned, possessed, maintained, furnished, advertised, offered for rental, chartered, and/or exercised responsibility over the recreational vessel involved in the occurrence described herein (the "Vessel").

1

4.      The Vessel is a 42-foot Sea Ray Express Cruiser that ROBY offered to the public for paid recreational excursions on Lake Michigan.

5.      Defendant ADAM J. STONE is a natural person residing in Cook County, Illinois.

6.      At all times relevant to this Complaint, STONE was retained and undertook to serve as captain of the Vessel for the August 11, 2024, excursion described below.

7.      Defendant GETMYBOAT, INC. d/b/a GETMYBOAT is a Delaware corporation doing business in Illinois. GETMYBOAT is an entity that operates an online platform through which recreational vessels, including the Vessel at issue here, are advertised, offered, booked, and paid for.

8.      At all times relevant to this action, GetMyBoat facilitated the transaction through which the subject Vessel was offered and booked for the August 11, 2024, excursion.

## ADMIRALTY AND MARITIME JURISDICTION

9.      This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1333(1) because this civil action arises from a maritime tort occurring aboard a vessel upon the navigable waters of Lake Michigan.

10.     Plaintiff hereby identifies and designates the claims asserted in this Complaint as admiralty or maritime claims within the meaning of Federal Rule of Civil Procedure 9(h).

11.     Plaintiff's claims arise under and are governed by the general maritime law of the United States to the extent applicable.

12.     The tort occurred aboard a recreational motor vessel operating upon the navigable waters of Lake Michigan.

13. The occurrence bears a substantial relationship to traditional maritime activity because the occurrence arose during the navigation and operation of a vessel carrying passengers on Lake Michigan and while the Vessel's captain was addressing an issue concerning the Vessel's anchor and/or related equipment.

14. The alleged conduct was capable of affecting maritime activity and involved the safety of passengers during the operation, navigation, maintenance, and use of a vessel on navigable waters.

15. Pursuant to the general maritime law, persons responsible for the operation and condition of a vessel owe persons lawfully aboard the vessel a duty to exercise reasonable care under the circumstances. See *Kermarec v. Compagnie Générale Transatlantique*, 358 U.S. 625, 630–32 (1959).

## **VENUE**

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District and Defendants ROBY and STONE reside within this District.

17. The subject excursion originated from 31st Street Harbor in Chicago, Illinois, within the Northern District of Illinois, Eastern Division.

18. The occurrence giving rise to this lawsuit occurred on Lake Michigan offshore from Chicago, Illinois, during an excursion that departed from and returned to Chicago.

**STATEMENT OF FACTS**

19. On August 11, 2024, Cara Houck rented the subject Vessel through GetMyBoat.com for a recreational excursion on Lake Michigan to celebrate Plaintiff SARA MIRANDA's 60th birthday during Chicago's air and water show.

20. The Vessel was advertised and offered through GetMyBoat under a listing entitled "Soak Up the Sun Onboard a 42' Sea Ray Express Cruiser in Chicago."

21. The Vessel was a 42-foot Sea Ray Express Cruiser offered for rental by Defendant ROBY.

22. The August 11, 2024, reservation was for a six-hour excursion scheduled to depart at approximately 10:00 a.m. and return at approximately 4:00 p.m.

23. The reservation identified a group size of six people.

24. The reservation expressly identified the excursion as "With Captain."

25. The reservation confirmation further represented that the payment for the excursion did not include the captain's services.

26. The Vessel was located at and the excursion departed from 31st Street Harbor in Chicago, Illinois.

27. The Vessel's GetMyBoat listing represented that a list of qualified captains would be provided in connection with rentals of the Vessel.

28. In connection with the subject rental, ROBY informed Ms. Houck that she should arrange for a captain to operate the Vessel.

29. ROBY provided Ms. Houck with names of captains whom she could contact to operate ROBY's Vessel.

4

30. One of the captains identified and/or referred to Ms. Houck by ROBY was Defendant STONE.

31. Ms. Houck thereafter contacted STONE and arranged for STONE to captain the Vessel for the August 11, 2024, excursion.

32. Plaintiff was an invited and lawful passenger aboard the Vessel.

33. Plaintiff was also a foreseeable passenger and user of the Vessel rented through the GetMyBoat transaction.

34. Other passengers aboard the Vessel included Ms. Houck, Ken and Laura Borner, who traveled from Castle Rock, Colorado, to Chicago. Also on the Vessel was Jack and Natalie Privateer.

35. On August 11, 2024, Plaintiff and the other passengers met STONE at the harbor where the Vessel was located.

36. STONE thereafter assumed command and operational control of the Vessel and undertook responsibility for serving as captain during the excursion.

37. Shortly after the Vessel embarked, an issue arose concerning the Vessel's anchor and/or anchor system. STONE made mention of the fact that the Vessel had been having issues with the anchor.

38. At approximately that time, Ms. Houck and Plaintiff were using a cellular telephone to conduct a FaceTime video call with Ms. Houck's partner showing him the types of aircraft flying overhead.

39. While Plaintiff and Ms. Houck were so occupied, STONE informed Ken and/or Laura Borner that he intended to remove a portion of the Vessel's floor or deck in order to

inspect, access, repair, and/or address the issue involving the Vessel's anchor and/or related equipment. The other two passengers, Jack and Natalie Privateer were on the bow of the boat.

40. STONE did not provide the same warning to Plaintiff, Ms. Houck or to Jack and Natalie Privateer who were located on the bow at the time.

41. STONE thereafter removed a substantial floor or deck panel from the passenger area of the Vessel.

42. Removal of the panel created a large, open, and unguarded hole in the floor or deck in an area occupied by and accessible to the Vessel's passengers.

43. The opening led several feet downward into the Vessel's machinery and/or engine compartment.

44. The opening created an immediate and substantial risk of serious bodily injury to a passenger who was unaware that the deck panel had been removed.

45. STONE had actual knowledge of the opening and the danger it presented because STONE personally removed the floor or deck panel.

46. STONE knew or should have known that Plaintiff and other passengers remained in the immediate vicinity of the opening.

47. Despite that knowledge, STONE did not provide Plaintiff with an adequate warning that the floor or deck panel had been removed.

48. STONE did not ensure that Plaintiff was aware of the opening before leaving it exposed.

49. STONE did not place a barrier, guard, rope, warning device, or other physical protection around the opening.

6

50. STONE did not station himself or another person beside the opening to prevent passengers from approaching or falling into it.

51. STONE did not require the passengers to move to a safe area before removing the floor or deck panel.

52. Instead, after creating the open and unguarded hole, STONE walked away from the opening and returned toward his operating position to inspect, operate, or otherwise address something concerning the Vessel and/or its anchor system.

53. The opening remained exposed, unguarded, and unattended.

54. Shortly thereafter, Ms. Houck turned her head and observed that the floor or deck panel had been removed.

55. Before Ms. Houck could adequately warn Plaintiff, Plaintiff took a step backward.

56. Plaintiff did not know that the floor immediately behind or near her had been removed.

57. Plaintiff had not been warned by STONE that the opening existed.

58. Plaintiff therefore had no reasonable opportunity to appreciate and avoid the dangerous condition before stepping backward.

59. Plaintiff began falling through the opening.

60. As an instinctive reaction to prevent herself from falling, Plaintiff reached for a table located aboard the Vessel.

61. The table was to be a fixture intended to remain secured aboard a moving recreational vessel.

62. Unknown to Plaintiff, the table was not adequately affixed, anchored, fastened, or otherwise secured to the Vessel.

63. When Plaintiff attempted to use the table to arrest her fall, the unsecured table failed to provide support.

64. Plaintiff consequently fell several feet through the open deck and into the machinery and/or engine compartment below.

65. Plaintiff landed violently on and/or among hard mechanical and structural components within the compartment.

66. At the time of Plaintiff's fall, Ms. Houck was still holding the cellular telephone used for the FaceTime call.

67. Ms. Houck dropped the telephone upon witnessing Plaintiff fall.

68. The individual participating in the video call heard screams and commotion immediately following Plaintiff's fall.

69. Ms. Houck attempted to reach down and assist Plaintiff but was unable to reach her because of the depth of the compartment into which Plaintiff had fallen.

70. Mr. Borner and STONE were required to reach into the opening to attempt to lift Plaintiff from the compartment.

71. Despite having just suffered a violent fall, Plaintiff was required to extend her arms upward so that she could be reached and physically lifted from the compartment.

72. Once Plaintiff was removed from the compartment, it became apparent that she had sustained numerous physical injuries to multiple areas of her body as a result of the fall.

73. Plaintiff sustained cuts, abrasions, torn muscles, open wounds, bruising, contusions, and other blunt-force trauma to multiple portions of her body, including her feet and ankles, legs, hand, shoulder, and upper back.

74. Plaintiff sustained an open and bleeding wound in the area of her ankle and heel, together with abrasions and other trauma to her lower extremities. Plaintiff's ankle and lower leg required cleaning, dressing, and bandaging while she remained aboard the Vessel.

75. Plaintiff also sustained visible abrasions, redness, and trauma to her shoulder and upper back, a wound to her hand, a broken watch and injuries to other portions of her body.

76. In the days following the occurrence, Plaintiff developed extensive bruising and discoloration, including substantial areas of dark purple, blue, yellow, and red bruising to her lower extremities.

77. Plaintiff sustained these injuries when her body struck hard surfaces, structures, machinery, and/or other components within the compartment during her fall.

78. Plaintiff experienced substantial pain, soreness, tenderness, physical limitations, and emotional distress following the occurrence.

79. The first-aid supplies available aboard the Vessel were insufficient to address the number and extent of Plaintiff's wounds, including insufficient bandages and/or gauze to adequately treat all of her cuts.

80. Following Plaintiff's extraction from the compartment, the other passengers attempted to clean, dress, bandage, ice, and otherwise tend to Plaintiff's numerous injuries while she remained aboard the Vessel.

81. Plaintiff's injuries and their progression were photographically documented both aboard the Vessel immediately following the occurrence and during the days thereafter.

82. STONE thereafter returned the Vessel to the dock.

83. Upon reaching the dock, Plaintiff required assistance getting to her feet and safely leaving the Vessel and dock.

84. Plaintiff was unable to walk without two people holding her up and was visibly shaken, pale, and in substantial pain following the occurrence.

85. Plaintiff was thereafter taken home, where her daughter remained with and monitored her because of concern regarding her condition and injuries.

86. Shortly after the occurrence, ROBY was notified that Plaintiff had fallen through the opening in the floor and/or deck of the Vessel and had sustained significant injuries.

87. ROBY thereby received prompt actual notice of the occurrence and Plaintiff's injuries and refunded Ms. Houck for the cost of the excursion.

88. Plaintiff continued to experience pain and physical symptoms following the occurrence.

89. Plaintiff sustained numerous wounds, cuts, abrasions, contusions, muscular and/or soft-tissue injuries, and other injuries as a result of the fall.

90. Plaintiff also suffered substantial emotional distress and anxiety as a result of the occurrence, including recurring nightmares concerning the fall for weeks thereafter.

91. Plaintiff's injuries interfered with her ability to perform her professional responsibilities.

92. At the time of the occurrence, Plaintiff had professional clients, including professional athletes preparing for the commencement of their competitive seasons.

93. As a direct result of her injuries, Plaintiff was required to cancel professional appointments and was unable to perform some of her normal work for a period following the occurrence.

94. Plaintiff thereby sustained lost income and other economic loss.

95. Plaintiff has obtained medical and/or professional evaluation and treatment concerning injuries sustained in the occurrence and has incurred medical and related expenses.

96. Plaintiff also sustained damage to personal property during the occurrence, including damage to a watch worn by Plaintiff at the time of her fall.

97. Before or at the commencement of the excursion, Plaintiff and/or the passengers were presented with documents that they were required or requested to sign in connection with boarding and/or participating in the excursion. Plaintiff does not presently possess a copy of any such document.

98. The identity of the person or entity that prepared and/or presented any such document, its terms, and the persons or entities purportedly covered thereby are presently within Defendants' knowledge and possession and will be established through discovery. Plaintiff denies that any such document bars or limits the claims asserted herein and expressly reserves all challenges to its existence, authenticity, formation, applicability, scope, and enforceability.

**COUNT I**
**MARITIME NEGLIGENCE**
**AGAINST DEFENDANT ADAM J. STONE**

99. Plaintiff incorporates Paragraphs 1 through 98 as though fully set forth herein.

100. As captain and operator of the Vessel, STONE owed Plaintiff, a lawful passenger, a duty under the general maritime law to exercise reasonable care under the circumstances for her safety.

101. STONE further had a duty to exercise reasonable care in operating the Vessel and in creating, managing, guarding, and warning passengers concerning hazards arising during his operation and maintenance of the Vessel.

102. STONE personally created the dangerous condition that caused Plaintiff's fall by removing the floor or deck panel and exposing the compartment several feet below.

103. STONE had actual knowledge of the dangerous condition because he personally created it.

104. STONE knew or reasonably should have known that passengers, including Plaintiff, remained in the immediate vicinity.

105. STONE breached his duties to Plaintiff in one or more of the following respects:

a. Removed a substantial section of the Vessel's floor or deck while passengers occupied the surrounding area;

b. Created a large opening leading several feet into the Vessel's machinery and/or engine compartment;

c. Failed to warn Plaintiff before removing the floor or deck panel;

d. Failed to warn Plaintiff after removing the floor or deck panel;

e. Failed to determine whether Plaintiff and all other nearby passengers knew that the deck had been opened;

f. Failed to direct Plaintiff and the other passengers to a safe location before opening the deck;

g. Failed to cordon off, barricade, guard, cover, or otherwise secure the opening;

h. Failed to remain at the opening while it remained exposed;

i. Walked away from the opening despite knowing that passengers remained nearby;

j. Failed to assign another person to guard the opening;

12

k. Failed to replace or secure the deck panel before leaving the opening unattended;

l. Failed to take reasonable precautions to prevent passengers from falling through the opening; and

m. Otherwise failed to exercise reasonable care under the circumstances for the safety of Plaintiff.

106. It was reasonably foreseeable that a passenger who had not been warned that the floor had been removed could step into or fall through the opening.

107. It was further reasonably foreseeable that such a fall into a machinery and/or engine compartment several feet below could cause serious bodily injury.

108. STONE's acts and omissions were a direct and proximate cause of Plaintiff's fall.

109. As a direct and proximate result of STONE's negligence, Plaintiff sustained the injuries and damages described herein.

**WHEREFORE,** Plaintiff SARA MIRANDA requests judgment against Defendant ADAM J. STONE for compensatory damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest as allowed by maritime and federal law, costs, and such other relief as the Court deems just and proper.

**COUNT II**
**MARITIME GROSS NEGLIGENCE AND/OR RECKLESSNESS**
**AGAINST DEFENDANT ADAM J. STONE**

110. Plaintiff incorporates Paragraphs 1 through 98 as though fully set forth herein.

111. As captain and operator of the Vessel, STONE owed Plaintiff a duty under the general maritime law to exercise reasonable care under the circumstances for her safety.

13

112. STONE personally created a substantial and immediately dangerous opening in the passenger deck by removing the floor or deck panel and exposing the machinery and/or engine compartment several feet below.

113. STONE had actual knowledge of the opening and the serious danger it presented because he personally removed the floor or deck panel.

114. STONE knew that passengers remained in and around the passenger area and knew, or consciously disregarded the substantial risk, that a passenger unaware of the opening could step or fall into it and suffer serious bodily injury.

115. Despite that known and substantial danger, STONE failed to ensure that Plaintiff had been warned, failed to direct all passengers to a safe location, failed to barricade, guard, cover, or otherwise secure the opening, and failed to station himself or another person at the opening.

116. STONE then walked away from the open deck area while the opening remained exposed, unguarded, unattended, and accessible to passengers.

117. Taken together, STONE's acts and omissions constituted a substantial departure from the exercise of reasonable care and, to the extent established through discovery, gross negligence and/or reckless disregard for the safety of Plaintiff and the other passengers.

118. STONE's grossly negligent and/or reckless acts and omissions were a direct and proximate cause of Plaintiff's fall and resulting injuries.

119. As a direct and proximate result of STONE's conduct, Plaintiff sustained the injuries and damages described herein.

WHEREFORE, Plaintiff SARA MIRANDA requests judgment against Defendant ADAM J. STONE for compensatory damages in an amount to be determined at trial, together

14

with pre-judgment and post-judgment interest as allowed by maritime and federal law, costs, and such other relief as the Court deems just and proper.

**COUNT III**
**MARITIME NEGLIGENCE — UNSAFE CONDITION OF VESSEL**
**AGAINST DEFENDANT DANA L. ROBY**

120.    Plaintiff incorporates Paragraphs 1 through 98 as though fully set forth herein.

121.    At all relevant times, ROBY owned, maintained, furnished, and offered the Vessel for paid use by renters and their invited passengers.

122.    Plaintiff was a lawful and foreseeable passenger aboard ROBY's Vessel.

123.    ROBY owed Plaintiff a duty under the general maritime law to exercise reasonable care under the circumstances with respect to conditions aboard the Vessel for which ROBY was responsible.

124.    ROBY knew or reasonably should have known that passengers aboard a recreational vessel may rely upon tables, railings, seats, and other apparently fixed components of the Vessel for balance, stability, and support.

125.    ROBY knew or reasonably should have known that a table situated in a passenger area of a moving recreational vessel that appeared to be installed as a fixture could foreseeably be relied upon by a passenger for stability or support.

126.    The table Plaintiff reached for during her fall was not adequately secured, anchored, affixed, or fastened to the Vessel.

127.    ROBY knew or, through the exercise of reasonable inspection and maintenance, should have known of the unsecured condition of the table.

128.    ROBY breached her duty of reasonable care in one or more of the following respects:

15

a. Furnished and offered for rental a Vessel containing a table that was not reasonably secured;

b. Failed to adequately bolt, fasten, anchor, or otherwise secure the table;

c. Failed to reasonably inspect the table and its mounting or securing mechanism;

d. Failed to reasonably maintain the table and surrounding passenger area;

e. Failed to correct the unsecured condition;

f. Failed to warn Plaintiff and the other passengers that the table was unsecured and should not be relied upon for stability or support;

g. Allowed an unsecured fixture and/or object to remain in an area intended for passenger use;

h. Failed to furnish a Vessel reasonably safe for its intended passenger use; and

i. Otherwise failed to exercise reasonable care under the circumstances.

129. When Plaintiff instinctively reached for the table to prevent herself from falling, the unsecured table failed to provide support.

130. The unsecured condition of the table was a direct and proximate contributing cause of Plaintiff's fall and resulting injuries.

131. As a direct and proximate result of ROBY's negligence, Plaintiff sustained the injuries and damages described herein.

**WHEREFORE,** Plaintiff SARA MIRANDA requests judgment against Defendant DANA L. ROBY for compensatory damages in an amount to be determined at trial, together

with pre-judgment and post-judgment interest as allowed by maritime and federal law, costs, and such other relief as the Court deems just and proper.

**COUNT IV**
**NEGLIGENT UNDERTAKING AND/OR NEGLIGENT SELECTION**
**AGAINST DEFENDANT DANA L. ROBY**

132. Plaintiff incorporates Paragraphs 1 through 98 as though fully set forth herein.

133. ROBY offered the Vessel to paying renters for recreational excursions on Lake Michigan.

134. ROBY knew that persons renting the Vessel would require and/or utilize a captain to operate the Vessel during such excursions.

135. In connection with the subject rental, ROBY undertook to provide Ms. Houck with names of captains available to operate the Vessel.

136. ROBY specifically identified and/or referred Defendant STONE as one of the captains whom Ms. Houck could contact to operate ROBY's Vessel.

137. The Vessel's GetMyBoat listing represented in connection with rentals of the Vessel that a list of qualified captains would be provided.

138. Having undertaken to identify and/or refer captains for operation of her Vessel, ROBY had a duty to exercise reasonable care in performing that undertaking.

139. ROBY knew or reasonably should have known that renters and their invited passengers would foreseeably rely upon the identification and/or referral of captains in determining who would operate the Vessel.

140. Plaintiff was within the class of persons foreseeably exposed to physical harm if reasonable care was not exercised in connection with that undertaking.

17

141. To the extent established through discovery, ROBY breached the duties arising from her undertaking by failing to exercise reasonable care in the selection, identification, recommendation, verification, and/or referral of STONE to operate the Vessel.

142. Information concerning ROBY's prior relationship with STONE, STONE's prior operation of the Vessel, the basis upon which ROBY included STONE among the captains she provided to renters, any prior incidents or complaints, and the extent of ROBY's knowledge concerning STONE's experience and operation of the Vessel is presently within the knowledge and possession of Defendants and will be developed through discovery.

143. Plaintiff does not allege, without discovery, that STONE lacked a required Coast Guard credential or license; rather, Plaintiff alleges that ROBY undertook to identify and/or refer captains and was required to exercise reasonable care in carrying out that undertaking.

144. To the extent discovery establishes that ROBY failed to exercise reasonable care in performing that undertaking and that such failure contributed to STONE's operation of the Vessel on August 11, 2024, ROBY's negligence was a direct and proximate cause of Plaintiff's injuries.

**WHEREFORE,** Plaintiff SARA MIRANDA requests judgment against Defendant DANA L. ROBY for compensatory damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest as allowed by maritime and federal law, costs, and such other relief as the Court deems just and proper.

**COUNT V**
**NEGLIGENCE AND NEGLIGENT UNDERTAKING**
**AGAINST DEFENDANT GETMYBOAT, INC. d/b/a GETMYBOAT**

145. Plaintiff incorporates Paragraphs 1 through 98 as though fully set forth herein.

146. GetMyBoat operated the online platform through which the subject 42-foot Sea Ray Express Cruiser was advertised, offered, booked, and paid for in connection with the August 11, 2024 excursion.

147. GetMyBoat facilitated the transaction through which the subject Vessel was rented for the excursion.

148. The reservation confirmation associated with the subject transaction identified the rental as "With Captain."

149. The reservation confirmation further represented that the payment included captain services.

150. In connection with the subject listing and/or transaction, GetMyBoat participated in collecting and processing payments associated with the rental of the Vessel and captain services.

151. The Vessel's listing represented that a list of qualified captains would be provided.

152. The listing further made safety-related representations concerning the Vessel, including representations concerning safety equipment aboard the Vessel.

153. GetMyBoat knew or reasonably should have known that persons renting recreational vessels through its platform would bring family members, friends, and other invited passengers aboard those vessels.

154. Plaintiff was therefore a foreseeable passenger and foreseeable beneficiary of the exercise of reasonable care in any safety-related undertakings assumed by GetMyBoat in connection with the transaction.

155. To the extent GetMyBoat undertook to establish, administer, verify, communicate, or enforce requirements concerning the qualification of vessel owners, vessels,

19

captains, safety equipment, regulatory compliance, captain selection, or other safety-related aspects of rentals facilitated through its platform, GetMyBoat had a duty to exercise reasonable care in performing those undertakings.

156. GetMyBoat knew or reasonably should have known that the negligent performance of any safety-related undertaking concerning a recreational vessel or captain could expose foreseeable passengers to a risk of serious physical injury.

157. GetMyBoat was negligent, to the extent established through discovery, in one or more of the following respects:

a. Failed to exercise reasonable care in performing safety-related undertakings it assumed concerning vessels offered through its platform;

b. Failed to exercise reasonable care in connection with representations and/or undertakings concerning the provision or availability of qualified captains;

c. Failed to exercise reasonable care in establishing, administering, communicating, enforcing, and/or monitoring safety requirements applicable to the subject Vessel and rental;

d. Failed to exercise reasonable care concerning the qualification, verification, approval, and/or use of captains in connection with transactions facilitated through its platform, to the extent it undertook such functions;

e. Failed to exercise reasonable care in connection with safety representations made concerning the subject Vessel;

f. Failed to adequately communicate material safety limitations or information concerning the services it undertook to provide;

g. Increased the risk of harm to foreseeable passengers through the negligent performance of safety-related undertakings, to the extent established through discovery; and

h. Otherwise failed to exercise reasonable care in the performance of undertakings established through discovery.

158. The precise nature and extent of GetMyBoat's relationship with ROBY, the requirements imposed upon ROBY as a person offering the Vessel through GetMyBoat, GetMyBoat's policies in effect on August 11, 2024 concerning bareboat charters and captains, the manner in which captain payments were collected and distributed, the representations made during the booking process, and GetMyBoat's safety and verification procedures are matters within Defendants' possession and will be developed through discovery.

159. Plaintiff was not the individual who created the subject GetMyBoat booking or entered into the subject rental transaction through the GetMyBoat platform.

160. Plaintiff does not allege that she personally assented to any contractual release, waiver, arbitration provision, limitation of liability, or other contractual restriction contained in the GetMyBoat booking transaction. Any separate document presented to Plaintiff in connection with boarding or participating in the excursion is addressed above, and Plaintiff expressly reserves all arguments concerning its existence, authenticity, formation, applicability, enforceability, and scope.

161. To the extent established through discovery, GetMyBoat's negligent acts and omissions were a direct and proximate cause and/or contributing cause of the occurrence and Plaintiff's resulting injuries.

21

**WHEREFORE,** Plaintiff SARA MIRANDA requests judgment against Defendant GETMYBOAT, INC. d/b/a GETMYBOAT for compensatory damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest as allowed by maritime and federal law, costs, and such other relief as the Court deems just and proper.

## DAMAGES

162. As a direct and proximate result of the foregoing acts and omissions, Plaintiff has suffered and will continue to suffer damages.

163. Plaintiff's damages include, but are not limited to:

a. Physical injuries, including cuts, abrasions, contusions, muscular and soft-tissue injuries, and other injuries sustained in the fall;

b. Past and future physical pain and suffering;

c. Past and future mental anguish and emotional distress;

d. Loss of enjoyment of life and interference with normal activities;

e. Past and future medical, treatment, rehabilitation, and related expenses;

f. Lost wages, earnings, and income;

g. Loss of earning capacity, to the extent established through discovery;

h. Interference with Plaintiff's professional activities and obligations;

i. Damage to Plaintiff's personal property, including her watch; and

j. Such additional compensatory damages as may be established through discovery and at trial.

164. Plaintiff seeks all compensatory damages recoverable under the general maritime law and other applicable law.

22

165. Plaintiff further seeks pre-judgment interest to the fullest extent permitted under the general maritime law, post-judgment interest pursuant to 28 U.S.C. § 1961, taxable costs, and all other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SARA MIRANDA respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants, jointly and/or severally to the extent permitted by the governing law;

B. Award Plaintiff compensatory damages in an amount to be determined at trial;

C. Award Plaintiff past and future damages for physical pain and suffering;

D. Award Plaintiff past and future damages for mental anguish and emotional distress;

E. Award Plaintiff damages for loss of enjoyment of life and interference with normal activities;

F. Award Plaintiff past and future reasonable medical and related expenses;

G. Award Plaintiff lost earnings, income, and any proven impairment of earning capacity;

H. Award Plaintiff damages for her damaged personal property;

I. Award Plaintiff pre-judgment interest as permitted under the general maritime law;

J. Award Plaintiff post-judgment interest pursuant to 28 U.S.C. § 1961;

K. Award Plaintiff taxable costs; and

L. Award such other and further relief as this Court deems just and proper.

Respectfully submitted,

**SARA MIRANDA**

By: /s/ Cara M. Houck

**CARA M. HOUCK**
The Houck Law Group LLC
505 N. Lake Shore Drive, Suite 6501
Chicago, Illinois 60611
Illinois ARDC No. 6239153
Telephone: (630) 202-1249
Email: cara@houcklawgroup.org
Attorney for Plaintiff

24